**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BOARD OF TRUSTEES of the ROCKFORD PIPE TRADES INDUSTRY PENSION FUND *et al.*, | ) ) ) ) |
| Plaintiffs, | ) **Case No. 10 CV 3581** |
| v. | ) ) |
| FIORENZA ENTERPRISES, INC. d/b/a SERVICE PLUMBING, | ) **Magistrate Judge Young B. Kim** ) ) |
| Defendant. | ) **March 18, 2011** |

**MEMORANDUM OPINION and ORDER**

Before the court is the summary judgment motion of Plaintiffs Board of Trustees of the Rockford Pipe Trades Industry Pension Fund, Board of Trustees of the Plumbers and Pipe Fitters, Local 23, U.A. Health and Welfare Fund, Board of Trustees of the Plumbers and Pipe Fitters, Local 23, U.A. Journeyman and Apprentice Training Fund (collectively "Trust Funds"), Plumbers and Pipe Fitters, Local 23, U.A. ("Union"), Piping Industry Council of the Rockford Area ("Employer Association"), Board of Trustees of the Rockford Pipe Trades Industry 401(k) Plan (the "401(k) Plan"), and Board of Trustees of the Rockford Pipe Trades LMCC ("LMCC"). For the following reasons, the motion is granted in part and denied in part:

**Procedural History**

On June 10, 2010, Plaintiffs filed this action alleging that Defendant Fiorenza Enterprises, Inc. d/b/a Service Plumbing ("Fiorenza") violated Section 502 of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1145, and Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, by failing to make monthly contributions to the Trust Funds, Employer Association, the 401(k) Plan, and the LMCC, and by failing to deduct and remit dues to the Union pursuant to the terms of the parties' collective bargaining agreement ("CBA"). (R. 1.) On August 31, 2010, Fiorenza filed an answer in which it asserted an affirmative defense requesting that the court offset any judgment against it by $13,000 in unpaid target money that the Union owes to Fiorenza. (Id. at 21.)

On October 28, 2010, Plaintiffs filed the instant motion for summary judgment and supporting papers. (R. 25-27.) On December 10, 2010, Fiorenza filed its response to the motion, (id. at 35-37), and on December 27, 2010, Plaintiffs filed a reply, (id. at 38). Subsequent to briefing the motion for summary judgment, the parties reported to the court that they had reached an agreement as to the amount of unpaid contributions and unpaid interest Fiorenza owes to Plaintiffs. (Id. at 40.) On February 4, 2011, the parties filed a Stipulation of Material Facts ("Stipulation") detailing each of the amounts Fiorenza owes. (Id. at 41.) Furthermore, in the Stipulation, the parties agreed that Fiorenza did not owe any contributions for Joseph Fiorenza because his alumni participation agreement terminated on August 26, 2009. (Id.)

On March 9, 2011, the court held an oral argument in order to clarify a number of issues raised in Plaintiffs' motion for summary judgment. (R. 43, 47.) The next day, on

March 10, 2011, Plaintiffs filed a supplement to their motion for summary judgment comprising of two affidavits. (Id. at 48.) In the first affidavit, Plaintiffs detailed their liquidated damages assessment for the period of January 2008 through July 2010. (Id., Ex. 1.) In the second affidavit, Plaintiffs detailed the amount of attorney's fees and costs they have incurred for the period of December 28, 2010, through March 10, 2011. (Id., Ex. 2.) The court granted Fiorenza until March 16, 2011, to file a response to Plaintiff's supplemental affidavits, but Fiorenza did not file one.

**Facts**

On June 10, 2002, Fiorenza entered into a Subscription Agreement whereby it agreed to be bound by the terms and conditions of the CBA negotiated between the Union and the Employer Association, and by all other successor agreements entered into between these two entities. (R. 26, Pls.' Facts ¶ 4.)[1] By executing the Subscription Agreement, Fiorenza was further bound by the provisions of the Agreements and Declarations of Trust (collectively "Trust Agreements"), which created the Trust Funds and the 401(k) Plan. (Id. ¶ 5.)

Under the terms of the CBA and Trust Agreements, Fiorenza is required to prepare monthly contribution reports of the hours worked by each covered employee and pay contributions to the Trust Funds, the Employer Association and the LMCC for each hour paid at the rates specified by these agreements. (R. 26, Pls.' Facts ¶¶ 6-9.) In addition, Fiorenza

---

[1] Plaintiffs' Local Rule ("LR") 56.1(a)(3) Statement of Material Facts is cited as "Pls.' Facts ¶ __." Fiorenza's LR56.1(b)(3)(B) Response to Plaintiff's Statement of Material Facts is cited as "Def.'s Fact Resp. ¶ __."

3

is required to deduct from the gross wages of each covered employee an amount designated by an employee and remit that amount to the 401(k) Plan each month. (Id. ¶ 10.) Fiorenza is further required to deduct assessments for Union dues and other programs from the wages of each covered employee and remit them to Plaintiffs on a monthly basis. (Id. ¶ 11.) The CBA and Trust Agreements mandate that the monthly contribution reports and payments be made on or before the 10th day of each month. (Id. ¶ 12.)

According to the CBA, an employer who fails to submit monthly contribution reports and contributions to the Trust Funds, the Employer Association, the 401(k) Plan, and the LMCC on a timely basis are responsible for the payment of liquidated damages and interest. (R. 26, Pls.' Facts ¶ 13.) A delinquent employer shall pay to the fund involved: "1) liquidated damages in the amount of five percent (5%) of delinquent contributions, and 2) interest on unpaid contributions at the rate of Prime + (2%) per annum from the first day of the month following the month in which they are due until paid." (Id., CBA, § 14.6(a).) And the CBA requires that a delinquent employer "pay all reasonable costs incurred by the Trust Funds in the collection of unpaid contributions, liquidated damages or interest charges," including attorney's fees and costs. (Id. ¶ 14.)

Fiorenza failed to pay the full amount of the contributions and Union dues it owes to Plaintiffs for the period of July 2009 through July 2010. (R. 41.) In August 2010, after Plaintiffs filed the instant action, Plaintiffs obtained a partial payment from a letter of credit secured by Fiorenza in the amount of $20,000, which reduced the amount of unpaid

4

contributions. (R. 26, Pls.' Facts ¶ 16.) The parties have reached an agreement that Fiorenza owes Plaintiffs $30,952.65 in unpaid contributions and $2,969.68 in unpaid interest through July 2010. (R. 41.) However, the parties dispute the amount of target money the Union owes to Fiorenza and the amount of liquidated damages, attorney's fees and costs Fiorenza owes to Plaintiffs. (R. 36, Def.'s Fact Resp. ¶¶ 19-22.)

**Analysis**

Summary judgment is appropriate when the record establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In deciding whether genuine issues of material fact exist, the court must "review the record in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in that party's favor." *Vanasco v. Nat'l-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). A genuine issue of material fact is not shown by the "mere existence of some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of establishing the basis for its motion and "identifying those portions of [the record] which it believes demonstrate the

5

absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The moving party may satisfy this initial burden by presenting specific evidence on a particular issue or by pointing out that there is "an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the moving party has met its burden, the responsibility shifts to the nonmoving party to show that a genuine issue of material fact exists. *Keri v. Board of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). However, the nonmoving party cannot simply rest on allegations or denials in its own pleadings, but "must—by affidavits or as otherwise provided [in Rule 56]—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); *LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997).

Summary judgment is neither a substitute for a trial on the merits nor a vehicle for resolving factual disputes. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). After a court draws all reasonable inferences from the facts in favor of the nonmoving party, if genuine issues of material fact remain and a reasonable trier of fact could find for the nonmoving party, summary judgment cannot be entered. *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992). Therefore, summary judgment is precluded "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007) (citation omitted).

In the instant motion for summary judgment, Plaintiffs assert that Fiorenza, a signatory to a valid CBA, breached the terms of the CBA by failing to make required

contributions on behalf of covered employees and by failing to deduct and remit Union dues. (R. 27, Pls.' Mem. at 5-6.) Plaintiffs therefore seek a court order requiring that Fiorenza pay all unpaid monthly contributions, Union dues, interest, liquidated damages, attorney's fees and costs. (Id. at 5-9.)

Plaintiffs in this case are entitled to certain monetary relief and damages as a matter of law. Section 1145 of ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; *Central States, Southeast & Southwest Areas Pension Fund v. Transport, Inc.*, 183 F.3d 623, 627 (7th Cir. 1999) (ERISA "requires employers to comply with the terms of their agreements to make contributions to funds."). When an employer fails to make the required contributions, the "employee benefit fund is entitled to judgment under Section 1132(g)(2) of ERISA." *Operating Eng'rs Local 139 Health Benefit Fund v. Great Lakes Excavating, Inc.,* No. 09-CV-787, 2010 WL 2816220, at *1 (E.D. Wis. July 16, 2010). In an action to enforce Section 1145 in which a judgment is entered in favor of an employee benefit plan, Section 1132(g)(2) mandates that the court award the plan the following:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

7

> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2)(A)-(E).

First, Plaintiffs are entitled to $31,098.73 in unpaid contributions and interest. With respect to the issues of unpaid contributions and unpaid interest, the parties agree that Fiorenza owes Plaintiffs the sum of $30,952.65 in unpaid contributions and Union dues for the period July 2009 through July 2010, and the sum of $2,969.68 in unpaid interest for the period January 2008 through July 2010. (R. 41.) While Plaintiffs initially sought unpaid contributions on behalf of Joseph Fiorenza, the parties now agree that Fiorenza does not owe any contributions on behalf of Joseph Fiorenza because his alumni participation agreement terminated on August 26, 2009. (Id.)

However, the parties dispute the amount of target money that should be applied in this case. In its answer, Fiorenza asserts an affirmative defense in which it requests that the court offset any judgment entered against it by the amount of target money the Union owes to Fiorenza. (R. 21 at 3.) While the Union has agreed to apply a maximum of $5,030 in target money to offset the amount of the judgment Plaintiffs are seeking from Fiorenza, Plaintiffs

8

contend that only $2,823.60 should be applied to the judgment because the Union is only seeking that amount in unpaid dues from Fiorenza. (R. 27, Pls.' Mem. at 9.) But Fiorenza argues that the amount of the judgment should be reduced by the entire amount of target money the Union concedes it owes to Fiorenza, which is $5,030. (R. 37, Def.'s Resp. at 4.)

The court finds that the amount of the unpaid contributions Fiorenza owes to Plaintiffs should be reduced by $2,823.60, which represents the amount of unpaid dues that Fiorenza owes to the Union and the amount Plaintiffs are willing to apply to this case. The court cannot offset a judgment by more than what Fiorenza owes the Union because the Union is an entity separate from the Trust Funds. Furthermore, Fiorenza failed to submit any evidence whatsoever supporting its affirmative defense or that persuasively refutes Plaintiffs' assertion that the target money should only be used to offset the amount that Fiorenza owes the Union.

Because the parties do not dispute that Fiorenza, a signatory to the CBA, breached the terms of the CBA and Trust Agreements by failing to make the required contributions and because the parties have stipulated to the amount of unpaid contributions and interest Fiorenza owes, Plaintiffs' motion for summary judgment is granted and the court enters judgment in favor of Plaintiffs for unpaid contributions and Union dues in the amount of $28,129.05[2] under Section 1132(g)(2)(A) and for interest in the amount of $2,969.68 under Section 1132(g)(2)(B), for a total sum of $31,098.73.

---

[2] The $28,129.05 figure was calculated by subtracting $2,823.60 (target money) from $30,952.65 (unpaid contributions and Union dues).

9

Second, Plaintiffs are entitled to $2,406.45 in liquidated damages. Section 1132(g)(2)(C)(ii) is applicable when "(1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions existed at the time of the suit, and (3) the plan provides for liquidated damages." *Chicago Dist. Council of Carpenters Pension Fund v. Indus. Erectors, Inc.*, 840 F.Supp. 1248, 1256 (N.D. Ill. 1993) (citing *Idaho Plumbers & Pipefitters v. United Mech.*, 875 F.2d 212, 215 (9th Cir. 1989)); *see also Gilles v. Burton Constr. Co.*, 736 F.2d 1142, 1144 (7th Cir. 1984) (liquidated damages are "mandatory in an action in which judgment in favor of the plan is awarded"). Because the court is entering judgment against Fiorenza for unpaid contributions that existed at the time the lawsuit was filed on June 10, 2010, and because the CBA requires the payment of liquidated damages in the amount of five percent of delinquent contributions, Plaintiffs are entitled to an award of liquidated damages. Pursuant to the applicable provision, this award is mandatory. Accordingly, the court grants Plaintiffs' motion for summary judgment as to this issue and enters judgment in favor of them, under Section 1132(g)(2)(C)(ii), in the amount of $2,406.45.[3]

In addition to the liquidated damages on the amount of unpaid contributions, Plaintiffs also claim that they are entitled to liquidated damages on the amount of delinquent or late contributions paid by Fiorenza prior to the filing of this lawsuit. In the supplement to their motion for summary judgment, Plaintiffs contend that during the period of January 2008

---

[3] The $2,406.45 figure was calculated by multiplying $48,129.05 by five percent. The $48,129.05 figure is comprised of $28,129.05 (unpaid contributions) and a $20,000.00 letter of credit payment Fiorenza made to Plaintiffs in August 2010.

through July 2010, Fiorenza made some of the monthly contributions but not within the required time frame. (R. 48, Ex. 1.) Therefore, because Fiorenza made late monthly contributions prior to the filing of the lawsuit, Plaintiffs assert that they are entitled to contractual liquidated damages as provided by the CBA's liquidated damages provision on the late payments.

Plaintiffs, relying on the federal common law test for liquidated damages articulated in *Chicago Dist. Council*, contend that the CBA's liquidated damages provision meets the two requirements for enforceability because the harm caused by the breach is difficult to estimate and the five percent assessment is a reasonable forecast of just compensation for the harm caused by the breach. (R. 38, Pls.' Reply at 6-7.) To support their position, Plaintiffs have submitted the affidavit of Elyn Watson, who is a Certified Public Accountant and employed by Benefits Management Group, Inc., the Third-Party Administrator for the Employer Association, Trust Funds and Union. (R. 26, Ex. 5, Aff. of Elyn Watson.) In her affidavit, Watson testifies that the CBA's five percent liquidated damages assessment is appropriate because "(1) it is a reasonable estimate of anticipated losses caused by an employer's untimely payments to the Trust Funds; (2) it is based on administrative costs, collection costs and loss of investment earnings; and (3) it was a good faith attempt to set an amount equivalent to the damages anticipated by an employer's late payment." (Id.) To further bolster their position that the liquidated damages provision is enforceable, Plaintiffs also point out that Fiorenza has failed to provide any evidence refuting Watson's testimony

11

or to show it made timely contributions during the period of January 2008 through July 2010. (R. 38, Pls.' Reply at 6-7.)

As a threshold matter, Seventh Circuit precedent establishes that the enforceability of a liquidated damages clause will be reviewed under federal common law when delinquent or late contributions are paid by a defendant prior to the filing of a lawsuit. *See Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 654-55 (7th Cir. 2001) ("Since section 1132(g)(2) is inapplicable to [claims for late contributions paid by a defendant before the suit was brought], they must be adjudicated under common law-but federal common law, which governs the interpretation of ERISA plans."); *see also Chicago Dist. Council*, 840 F.Supp. at 1257 ("Having decided that ERISA does not preempt the federal common law of liquidated damages where Section 1132(g) does not apply, the Court must resolve whether the liquidated damages provision at issue is void as a penalty.") (citing *Idaho Plumbers & Pipefitters*, 875 F.2d at 217). Under federal common law, "[a] contractual provision allowing for liquidated damages must meet two requirements for enforceability." *See id.* (citing *United Order of Am. Bricklayers and Stone Masons Union No. 21 v. Thorleif Larsen & Son, Inc.*, 519 F.2d 331, 337 (7th Cir. 1975)). The first requirement is that harm caused by a breach must be difficult or impossible to estimate. *Id.* The second requirement is that the amount fixed must be a reasonable forecast of just compensation for the harm caused by a breach. *Id.* The parties' intentions determine if the second requirement is satisfied. *Id.*

Having reviewed the CBA's liquidated damages provision, the court finds that the provision is unenforceable because it does not meet the second requirement of the federal common law test. First, Plaintiffs have not provided any evidence of the type of harm that the drafters of the liquidated damages provision intended to remedy. Second, because the court does not know what type of harm the provision was intended to cover, it cannot determine whether the five percent assessment rate would be a reasonable forecast of just compensation for such harm. *See Chicago Dist. Council*, 840 F.Supp. at 1258 (district court declined to award liquidated damages because it was unclear what kind of harm the drafters of the liquidated damages provisions intended to cover and whether the 1.5% monthly assessment would result in amounts larger than necessary). Third, Watson's affidavit does not shed any light on the drafters' intentions and constitutes a conclusory and selfserving statement that simply tracks the federal common law test. *See e.g., Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir. 1997) ("[C]onclusory allegations and selfserving affidavits, if not supported by the record," are of no value.). Accordingly, because the court cannot decide whether liquidated damages in the amount of five percent was a reasonable forecast of just compensation for the harm caused by Fiorenza's breach, Plaintiffs' motion for summary judgment is denied to the extent it seeks contractual liquidated damages on late contribution payments made prior to filing this lawsuit.

Finally, Plaintiffs are entitled to an award of reasonable attorney's fees and costs in the amount of $14,729.70 because judgment is being entered in their favor for unpaid

contributions, interest, and liquidated damages. *See* 29 U.S.C. § 1132(g)(2)(D) (when a "judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant"). Under Section 1132(g)(2)(D), an award of attorney's fees is non-discretionary. *Plumbers' Pension Fund, Local 130 v. Domas Mech. Contractors, Inc.,* 778 F.2d 1266, 1271 (7th Cir. 1985); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.,* 298 F.3d 600, 608 (7th Cir. 2002). Because Plaintiffs are entitled to an award of attorney's fees, the court must decide whether the fees they seek are reasonable.

In deciding if the requested fees are reasonable, the starting point is the "lodestar" method: the number of hours reasonably expended by Plaintiffs' attorneys multiplied by their reasonable hourly rates. *People Who Care v. Rockford Board of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996); *see also Dutchak v. Central States, Southeast and Southwest Areas Pension Fund,* 932 F.2d 591, 596 (7th Cir. 1991) ("Calculation of the lodestar is the starting point for any award of attorney's fees. It represents the number of hours reasonably expended multiplied by the appropriate hourly rate."). The court may increase or reduce the lodestar calculation based on a number of factors, which include Plaintiffs' degree of success, *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999), and the relationship between the lodestar amount and the damages awarded by the court. *Moriarty v. Svec*, 233 F.3d 955, 967-68 (7th Cir. 2000) (while there are "no mechanical rules requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or

14

recovered, . . . proportionality concerns are a factor in determining what a reasonable attorney's fee is").

Plaintiffs request $14,729.70 in attorney's fees and costs for the prosecution of this case. In support of these fees and costs, Plaintiffs have submitted three separate billing statements for the period of April 29, 2010, through March 10, 2011, detailing that their attorneys spent 69.52 hours on this case and charged hourly rates of $195, $210, or $235 for their work. (R. 26, Ex. 10; R. 38, Ex. B, and R. 48, Ex. 2.) The billing statements outline the attorneys' tasks, which include drafting the complaint, motion for summary judgment and other related court documents, and consulting with the court and Fiorenza's attorney in an effort to resolve this matter. (Id.)

Fiorenza does not dispute the reasonableness of Plaintiffs' hourly fee rates or the number of hours spent in this case.[4] However, Fiorenza argued to the court that it must take into account that Plaintiffs made certain concessions during this lawsuit, such as the contribution amount associated with Joseph Fiorenza, and that if Plaintiffs had taken this position sooner, the parties could have worked out their differences and could have avoided this litigation. The court appreciates Fiorenza's argument, but it is too speculative and is without reliable support. Notably, Fiorenza has not shown that it paid the remaining balance after Plaintiffs discounted the outstanding balance by the amount associated with Joseph

---

[4] During the March 9, 2011 oral argument, Fiorenza conceded that the number of hours expended by Plaintiffs' attorneys and the hourly rates charged by Plaintiffs' attorneys are reasonable.

15

Fiorenza. Having reviewed the billing statements, the court finds that the hourly rates and the number of hours spent in the prosecution of this case are reasonable. Accordingly, Plaintiffs' motion for summary judgment is granted and the court enters judgment in favor of Plaintiffs for attorney's fees and costs in the amount of $14,729.70 under Section 1132(g)(2)(D).

**Conclusion**

For the foregoing reasons, Plaintiffs' motion for summary judgment is granted in part and denied in part. The motion is granted to the extent Plaintiffs request unpaid contributions, interest, liquidated damages on unpaid contributions that existed at the time the lawsuit was filed, and attorney's fees and costs pursuant to Section 1132(g)(2)(A)-(D). However, the motion is denied to the extent that Plaintiffs request contractual liquidated damages. Accordingly, Fiorenza is ordered to pay Plaintiffs $28,129.05 in unpaid contributions, $2,969.68 in interest, $2,406.45 in liquidated damages, and $14,729.70 in attorney's fees and costs for a total amount of $48,234.88.

**ENTER:**

_____
Young B. Kim
U.S. Magistrate Judge